## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

ERICA ADAIR, in her capacity  )
as Administrator of the  )
ESTATE OF CHARLES ADAIR,  )
Deceased, and  )
 )
C.A., a minor, by her general guardian  )
and Mother CHANEE' LESHAUN  )
LANE,  )
 )
         **Plaintiffs,**  )
 )
v.  )    **Case No.: 2:26-cv-2192**
 )
UNIFIED GOVERNMENT  )
OF WYANDOTTE  )
COUNTY/KANSAS CITY, KANSAS,  )
 )    <u>**JURY TRIAL DEMANDED**</u>
RICHARD W. FATHERLEY, Jr., in his  )
individual capacity,  )
 )
DANIEL SOPTIC, in his individual  )
capacity, and in his official capacity as  )
Sheriff of Wyandotte County,  )
 )
and  )
 )
DOES 1-5, Inclusive.  )
 )
         **Defendants.**  )

## <u>COMPLAINT FOR DAMAGES (42 U.S.C. § 1983)</u>

## <u>INTRODUCTION</u>

1.    Plaintiff Erica Adair (hereinafter, "Plaintiff") brings this civil rights action under 42 U.S.C. § 1983 for violations of Decedent Charles Adair's rights under the Fourth

1

and Fourteenth Amendments, and related state-law claims.  Plaintiff proceeds solely in her representative capacity as Administrator of the Estate of Charles Adair.

2.  Plaintiff C.A., a minor, by and through her mother and guardian, Chanee' Leshaun Lane, (hereinafter, "Plaintiff C.A.") brings an action for Wrongful Death pursuant to K.S.A. 60-1901 *et seq*.

## JURISDICTION AND VENUE

3.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because this action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction supporting Plaintiffs' claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

4.  This Court has supplemental jurisdiction over Plaintiffs' related state-law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

5.  Venue is proper in this District under 28 U.S.C. § 1391(b).  The events giving rise to the Plaintiffs' claims occurred in this judicial district.

## PARTIES

6.  Plaintiff Erica Adair is the duly appointed Administrator of the Estate of Charles Adair[1], deceased, and brings federal civil rights and survival claims in that representative capacity only.

7.  Plaintiff C.A. a minor, by and through her mother and guardian, Chanee' Lane is the natural daughter and a lawful heir to decedent Charles Adair.

---

[1] Filed in the 29th Judicial District of Wyandotte County, Kansas, Case No. WY-2025-PR-000550

2

8.      Defendant Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"), is a body corporate organized under the laws of the State of Kansas and a consolidation of the governments of the City of Kansas City, Kansas and Wyandotte County, Kansas, which can sue and be sued in its corporate name, which can be served with legal process by certified mail to the Clerk of the Unified Government at Unified Government Clerk's Office, 707 N. 7th Street, Suite 323, Kansas City, Kansas 66101, pursuant to K.S.A. 60-304(d).

9.      Defendant Unified Government oversees and implements the policies, procedures, rules, regulations and guidelines of the Wyandotte County Sheriff's Office (hereinafter, "Sheriff's Office") and its agents and employees.

10.     At all relevant times, Defendant Unified Government was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Sheriff's Office and its employees and agents complied with the laws of the United States and the State of Kansas.

11.     Defendant Daniel Soptic (hereinafter, "Soptic"), at the time of the events alleged in this Complaint, was the Sheriff of Wyandotte County, Kansas, and final policymaker of the Sheriff's Office and had supervisory and training responsibilities for Defendant Fatherley.  He is being sued in both his individual capacity and official capacity and can be named as a defendant to represent the Sheriff's Office, and may be served with legal process by certified mail to the Clerk of Unified Government at Unified Government Clerk's Office, 707 N. 7th Street, Suite 323, Kansas City, Kansas 66101 pursuant to K.S.A.

3

60-304(d) in his official capacity, and served with legal process at his place of residence 2628 S. 51st Terrace, Kansas City, Kansas, 66106 in his individual capacity.

12.    Upon information and belief, Defendant Soptic was at all times material hereto employed by Defendant Unified Government as a duly appointed and sworn Sheriff and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

13.    Defendant Richard W. Fatherley ("Fatherley") was at all times relevant a duly appointed and sworn deputy employed by Defendant Unified Government, acting under color of state law and within the course and scope of his employment as part of the Sheriff's Office, and can be served with legal process by certified mail at 2236 South Mill Street, Kansas City, Kansas 66103.

14.    Upon information and belief, Defendant Fatherley was at all times material hereto employed by Defendant Unified Government as a duly appointed and sworn deputy and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

15.    At all relevant times, Defendant Fatherley acted under the supervision and management of Defendant Unified Government.

16.    Defendants Does 1-5 ("Doe Deputies") are sheriff's deputies for the Sheriff's Office. Doe Deputies were acting under color of law within the course and scope of their duties as deputies for the Wyandotte County Sheriff's Office.  At all relevant times, Doe Deputies were acting with the complete authority and ratification of their principal, Defendant Unified Government.

4

17.    At all relevant times, Defendant Unified Government was the employer of Defendant Richard W. Fatherley, Defendant Soptic, and Defendants Does 1-5.

18.    The true names and capacities, whether individual, corporate, association or otherwise of Defendants Does 1-5, inclusive, are unknown to Plaintiffs, who otherwise would sue these Defendants by their true name. Plaintiffs will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

19.    All the Defendants, at all times material to this Complaint, acted under color of state law.

### GENERAL ALLEGATIONS

20.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

21.    On or about July 5, 2025, Decedent Charles Adair was a pretrial detainee on misdemeanor traffic warrants in the custody of the Wyandotte County Sheriff's Office at the Wyandotte County Detention Center located in Kansas City, Wyandotte County, Kansas.

22.    Mr. Adair was suffering from a serious left-leg infection and required infirmary care and the use of a wheelchair for movement within the facility.

23.    On the evening of July 5, 2025, one or more Defendant Deputies transported Charles Adair - handcuffed in front and in a wheelchair - back to his cell.

24. While being moved to his cell, Defendant Deputies placed Mr. Adair face down on the lower bunk, with his upper body on the bed and his knees on the floor.

25. At some point while being moved to his cell, Defendant Deputies placed Mr. Adair face down in an unauthorized prone restraint position.

26. Mr. Adair repeatedly yelled for "help."

27. At this time, Mr. Adair was handcuffed, face-down, unable to stand or walk on his injured leg, and posing no threat to Defendant Fatherley, Defendant Doe Deputies, other Detention Center staff, or inmates.

28. Defendant Fatherley pressed his body weight onto Mr. Adair's back in a dangerous, procedurally unauthorized prone restraint, causing Mr. Adair to asphyxiate, and causing his death.

29. Mr. Adair was complying with commands, including responding "OK" to commands from Defendant Deputies. Defendant Deputies successfully removed his handcuffs while Defendant Fatherley continued to shift his weight forward, applying unauthorized and excessive pressure to Mr. Adair's back.

30. At no time did Defendant Does 1–5 intervene to stop Defendant Fatherley's continued use of unauthorized prone body-weight pressure after Mr. Adair became compliant and motionless, despite a duty to intervene to prevent constitutional violations.

31. After a prolonged period of prone restraint by Defendant Fatherley, Mr. Adair ceased all movement and became unresponsive. Defendant Fatherley exited the cell, leaving Mr. Adair face-down in the bunk after being asphyxiated by Defendant Fatherley.

32. A correctional facility nurse arrived and found Mr. Adair unresponsive with no pulse.

33. Mr. Adair was pronounced dead at approximately 9:19 p.m.

34. On August 14, 2025, Mr. Adair's final autopsy report prepared by the Wyandotte County Coroner determined Mr. Adair's cause of death to be complications of mechanical asphyxia, and his manner of death to be homicide.

35. In the hours leading up to the prone restraint, Mr. Adair exhibited clear signs of mental-health distress and altered mental status, including incoherent speech, rolling on the floor, yelling indecipherable statements, and behaving in a manner deputies themselves described as irrational and inconsistent with normal voluntary behavior.

36. Deputies reported that they believed Mr. Adair's medical condition, including a serious bone infection, "was affecting his brain," and observed him to be confused, disoriented, and unable to comply normally with commands.

37. In addition, Mr. Adair's medical history includes a diagnosis of schizophrenia.

38. Despite Defendant Deputies' knowledge that Mr. Adair's serious medical condition was causing him to be confused, disoriented, and unable to comply normally with commands, they violated policies and procedures that mandate how to interact with a pretrial detainee in this type of medical condition.

39. Detention deputies should be trained that individuals experiencing mental-health crises or altered mental status have increased vulnerability to positional

asphyxia and that the proper detention practices require modified tactics, including avoidance of prone restraints.

40. Deputies reported that Defendant Unified Government had not provided them with  hands-on training for dealing with use of force situations of a similar kind to the interaction with Mr. Adair since basic training, approximately 3 to 5 years prior to July 2025.

41. Despite these indicators that Mr. Adair was experiencing a mental-health crisis or altered mental status, Defendants failed to summon qualified medical or mental-health personnel, and instead applied force designed for active resistance, including a prone restraint with weight on his back.

42. Defendants failed to modify their tactics to account for Mr. Adair's apparent mental-health impairment, heightened medical vulnerability, or diminished capacity to understand or respond to commands. Or, in the alternative, Defendant Deputies were not properly trained by Defendant Unified Government in how to properly detain an individual in Mr. Adair's condition.

43. The dangers of prone restraint, particularly on individuals exhibiting signs of mental-health crisis, have been widely recognized in law enforcement, forensic science, and Tenth Circuit precedent. The Tenth Circuit has repeatedly held that prolonged prone restraint with body-weight constitutes deadly force and is clearly unconstitutional once a detainee is subdued.

44. Leaders within Defendant Unified Government have previously criticized criminal prosecutions of police officers who used prone restraints resulting in death.

8

Leaders within the Unified Government belittled the thought that prone restraints should be avoided, even in cases in which the prone restraint has resulted in death. Leaders, including the prior warden of the Wyandotte County Detention Center, used social media to communicate that the use of prone restraints, even in cases causing death, were appropriate, such as in the murder of George Floyd.

45. Defendant Fatherley was charged with second-degree murder by the Wyandotte County District Attorney on September 18, 2025 and placed on administrative leave by the Wyandotte County Sheriff's Office.

46. Despite the criminal proceedings against him, Defendant Fatherley was allowed to continue using his Wyandotte County Sherriff's Office email address in violation of Defendant Unified Government's polices and procedures.

47. Despite the known prohibition against allowing Defendant Fatherley to communicate with known witnesses in his criminal case, Defendant Unified Government allowed Defendant Fatherley to use his Wyandotte County Sheriff's Office email to communicate with Defendant Unified Government employees that Defendants knew to be witnesses. Defendant Fatherley regularly communicated with other members of the Wyandotte County Sheriff's Office via his official email account in the months following the commencement of criminal proceedings against him.

48. The emails Defendant Fatherley received from members of the Wyandotte County Sheriff's Office after he was criminally charged included requests for Fatherley to work overtime at the Wyandotte County Correctional Facility. Fatherley responded, volunteering to work overtime between October 15 to October 18, 2025.

9

49.    Upon information and belief, Defendant Fatherley is still being allowed access to his Wyandotte County Sheriff's Office email account as of the date of this Complaint.

## COUNT I

### Fourteenth Amendment Excessive Force (42 U.S.C. § 1983)
### *(Defendant Fatherley and Doe Deputies 1-5)*

50.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

51.    Defendants Fatherley and Doe Deputies, while working as deputies for the Sheriff's Office, and acting within the course and scope of their duties, used an objectively unreasonable prone restraint and applied significant pressure to Charles Adair's back, torso, and/or extremities for an extended period, restricting his ability to breathe and causing respiratory distress and death.

52.    Charles Adair did not pose an immediate threat of death or serious bodily harm and was compliant.

53.    A reasonable officer would have recognized that Mr. Adair was exhibiting symptoms of mental-health distress and diminished capacity, requiring de-escalation and medical intervention, not prone restraint with body-weight pressure.

54.    The use of a prone, body-weight restraint on a mentally-distressed, medically-compromised detainee was objectively unreasonable and posed a known and substantial risk of asphyxia.

55. Defendants Fatherley and Doe Deputies continued application of force was excessive and unconstitutional under the Fourteenth Amendment.

56. As a direct and proximate result of the actions of Defendants Fatherley and Doe Deputies, Charles Adair suffered conscious pain and suffering and loss of life.

57. Defendant Fatherley's conduct was willful, wanton, and in reckless disregard of constitutional rights, warranting punitive damages against him in his individual capacity.

58. As a result of their misconduct, Defendants Fatherley and Doe Deputies are liable for Mr. Adair's injuries, either because they were directly responsible for the use of excessive force, or because they were integral participants in the use of force, or because they failed to intervene to prevent it.

WHEREFORE Plaintiff prays the Court enter judgment against Defendants Fatherley and Doe Deputies for compensatory damages in such sum as is fair and reasonable, an award of punitive damages in an amount to be determined by the trier of fact, prejudgment interest as provided by law and for Plaintiff's costs, expenses, and attorneys' fees pursuant to 42 U.S.C. §1988, and for whatever further relief the Court deems just and proper.

## COUNT II
### *Monell* Liability - 42 U.S.C. § 1983
### *(Defendant Unified Government and Defendant Soptic, in his official capacity)*

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

11

60.     Defendant Soptic was the final policymaker for the Sheriff's Office and thus, for Unified Government in matters delegated or entrusted to him.

61.     Both before and at the time of the events alleged in the Complaint, the Sheriff's Office had policies, practices, customs, and procedures which operated to deprive Charles Adair of his constitutional rights.

62.     Defendants Soptic and Unified Government are accountable under 42 U.S.C. § 1983 because they established policies and practices that were intended to and did encourage, endorse, and permit their agents and employees to violate the constitutional rights of Charles Adair and other similarly situated persons.  At a minimum, Defendant Soptic and Unified Government were deliberately and/or recklessly indifferent to such constitutional violations.

63.     Defendant Unified Government failed to train deputies regarding the heightened dangers of prone restraint on detainees in mental-health crisis, despite well-established Tenth Circuit law prohibiting prolonged prone restraints and requiring officers to recognize and respond appropriately to obvious signs of diminished capacity.

64.     The constitutional violations were caused by Defendant Unified Government's policies, customs, or practices, including but are not limited to:

  a. Inadequate training and supervision regarding use of force, positional and restraint asphyxia, and responses to detainee compliance;

  b. Failure to investigate and discipline unconstitutional uses of force;

  c. Deliberate indifference to a known and obvious risk of positional asphyxia in detention settings;

d.  A policy, practice, or custom of failing to train deputies to recognize and appropriately respond to detainees exhibiting mental-health crises, altered mental status, or cognitive impairment;

e.  A policy, practice, or custom of using force—including prone restraints—on mentally ill or medically compromised detainees rather than utilizing de-escalation, crisis-intervention techniques, or medical assessment;

f.  A policy, practice, or custom of failing to require prompt medical or mental-health evaluation when detainees display signs of confusion, disorientation, or incoherence.

65.     These policies, customs, and practices were the moving force behind the violations of Charles Adair's rights and reflect deliberate indifference to the rights of pretrial detainees.

66.     The constitutional violations committed by Defendants arose from circumstances constituting a usual and recurring situation.

WHEREFORE, Plaintiff prays for judgment against Defendant Soptic and Unified Government for compensatory damages in such sum is fair and reasonable, prejudgment interest as provided by law and for Plaintiff's costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988 and for whatever further relief the Court deems just and proper.

## COUNT III
**Supervisory Liability (42 U.S.C. § 1983)**
*(Defendant Soptic, in his individual capacity)*

13

67.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68.     Through his own acts and omissions, including failures in training, supervision, and enforcement of policies concerning prone restraints and cessation of force upon compliance, Defendant Soptic caused or set in motion a series of events he knew or reasonably should have known would result in constitutional violations.

69.     Defendant Soptic knew or should have known that detainees experiencing mental-health episodes are at heightened risk of harm from prone restraints and positional asphyxia, yet failed to ensure deputies received adequate crisis-intervention or mental-health training.

70.     As the Tenth Circuit has emphasized, no reasonable officer may ignore the danger inherent in prone restraint, particularly where a detainee displays clear signs of mental-health distress. Supervisors must ensure adequate training and policies to prevent the use of deadly prone restraint on vulnerable detainees.

71.     Defendant Soptic failed to implement policies requiring medical or mental-health intervention when deputies encounter detainees exhibiting signs of confusion, disorientation, or irrational behavior, directly contributing to the constitutional violations suffered by Mr. Adair.

72.     Defendant Soptic's deliberate indifference was a direct and proximate cause of Charles Adair's injuries and death.

WHEREFORE, Plaintiff prays for judgment against Defendant Soptic compensatory damages in such sum is fair and reasonable, an award of punitive damages

14

in an amount to be determined by the trier of fact, prejudgment interest as provided by law and for Plaintiff's costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988 and for for whatever further relief the Court deems just and proper.

## COUNT IV
### Negligence (Supplemental State Law)
### *(Defendants Fatherley and Does 1-5, directly; Defendant Unified Government vicariously)*

73.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

74.    This Court has jurisdictions over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

75.    Plaintiff's state law claims do not raise any novel or complex issue of state law and do not substantially predominate over Plaintiff's federal law claims, and there are no other compelling reasons for declining jurisdiction.

76.    Plaintiff has satisfied all requirements of K.S.A. 12-105(b), and more than 120 days have elapsed since Plaintiff filed her Notice of Claims as required by K.S.A. 12-105(b).

77.    Defendants owed Charles Adair a duty to use reasonable care in the use of force, including using appropriate tactics, giving warnings, avoiding dangerous prone restraints, and ceasing force upon compliance.

78.    Defendants breached that duty by, among other things, applying body-weight pressure in a prone position, failing to reposition Charles Adair to facilitate breathing, and failing to promptly render aid.

79.    Defendants further breached their duty of care by failing to recognize that Mr. Adair was in a state of mental-health crisis and failing to summon medical or mental-health providers prior to using force.

80.    Reasonable deputies would have recognized that Mr. Adair's altered mental status required medical evaluation and de-escalation, not prone restraint with body-weight pressure.

81.    As a direct and proximate result, Charles Adair suffered conscious pain and suffering and death.

82.    Defendants Unified Government is vicariously liable for the wrongful acts of Defendants Fatherley and Doe Deputies pursuant to K.S.A. 75-6103(a).

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in such sum is fair and reasonable, an award of punitive damages in an amount to be determined by the trier of fact, prejudgment interest as provided by law and for Plaintiff's costs, expenses, and attorneys' fees and for whatever further relief the Court deems just and proper.

## <u>COUNT V</u>

**Wrongful Death (K.S.A. 60-1901 *et seq*.)**

***(Defendants Fatherley, Soptic and Does 1-5, directly in individual capacity; Defendant Unified Government vicariously)***

83. Plaintiff C.A. incorporates by reference all preceding paragraphs as if fully set forth herein.

84. This wrongful-death claim is brought for the exclusive benefit of the heirs at law of Charles Adair, including his minor daughter, C.A., who appears in this action by and through her mother and guardian, pursuant to K.S.A. 60-1902 and 60-1905.

85. Under K.S.A. 60-1901, if a death is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the decedent could have maintained the action had he lived. The death of Charles Adair was caused by Defendants' wrongful acts and omissions.

86. Defendants' negligent and wrongful acts and omissions, including the excessive and unreasonable prone restraint and failure to render timely aid, directly and proximately caused Mr. Adair's death.

87. Pursuant to K.S.A. 60-1903 and 60-1904, the heirs at law may recover damages found to be fair and just, including pecuniary and non-pecuniary losses such as loss of parental care, guidance, training, companionship, attention, advice, counsel, and protection; mental anguish, suffering, or bereavement; funeral and burial expenses; expenses for the care of the deceased caused by the injury; and pecuniary losses including loss of services, support, and contributions.

88. The Unified Government is vicariously liable under K.S.A. 75-6103(a) for negligent acts or omissions of its employees within the course and scope of employment.

WHEREFORE, Plaintiff C.A., the wrongful-death heir of Charles Adair, requests judgment for wrongful-death damages under K.S.A. 60-1901 *et seq*., itemized under

K.S.A. 60-1903, funeral and burial expenses, pre- and post-judgment interest as allowed by law, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff in her capacity as Administrator of the Estate of Charles L. Adair, requests judgment as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Survival damages, including pre-death pain and suffering and loss of life;

C. Punitive damages against individual-capacity defendants where permitted by law;

D. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988 on the § 1983 claims;

E. Pre- and post-judgment interest as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

## JURY DEMAND AND TRIAL LOCATION

Plaintiffs demand a trial by jury on all issues triable to a jury and designates this case to be tried in the United States District Court for the District of Kansas - Kansas City Division/Courthouse.

Respectfully submitted

**Davis Bethune & Jones, LLC**

/s/      *Ted Ruzicka*
Grant L. Davis          #14199
Ted Ruzicka            #24659
JT Malone              *Pro Hac Vice Pending*
1100 Main Street, Suite 2930

18

Kansas City, MO 64105
Tel. (816) 421-1600
Fax. (816) 472-5972
gdavis@dbjlaw.net
truzicka@dbjlaw.net
jtmalone@dbjlaw.net

**Ben Crump Law**

Ben Crump          *Pro Hac Vice Pending*
Gabrielle Higgins    *Pro Hac Vice Pending*
Sue-Ann Robinson  *Pro Hac Vice Pending*
614 S. Federal Highway
Fort Lauderdale, FL 33301
gabrielle@bencrump.com
sueann@bencrump.com

**Law Offices of Harry M. Daniels, LLC**

Harry M. Daniels    *Pro Hac Vice Pending*
4751 Best Road Suite 205
Atlanta, GA 30337
daniels@harrymdaniels.com


*ATTORNEYS FOR PLAINTIFF*